# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **TONY D. KIRBY,** | } | |
| Plaintiff, | } | |
| v. | } | **Case No.: 5:09-CV-1462-RDP** |
| **MICHAEL J. ASTRUE,** <br> **COMMISSIONER OF** <br> **SOCIAL SECURITY,** | } <br> } <br> } | |
| Defendant. | } | |

## MEMORANDUM OF DECISION

Plaintiff Tony D. Kirby brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Title II Social Security Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed in part, reversed in part, and remanded with instructions consistent with this memorandum of decision.

### I. Proceedings Below

This action arises from Plaintiff's applications for Title II Social Security DIB and Title XVI SSI pursuant to disability alleged to have resulted from a workplace injury incurred in 2003. (Tr. 127, 133). On January 20, 2003, Plaintiff fell from a ladder at work. (Tr. 233). CT scans administered on April 2, 2003 revealed mild spondylosis at C-3, C-4, and C-5 as well as broad-based subligamental herniation at L4. (Tr. 212, 213). After conservative treatment

proved ineffective, Plaintiff underwent bilateral laminectomies at L-4 and L-5 on May 29, 2003. (Tr. 235-37, 240, 296). After surgery, Plaintiff was released to continue work in a limited capacity, working two to three days per week with exertional limitations. (Tr. 44-45, 264). On February 14, 2006, Plaintiff quit his job after his employer informed him that he needed to either return to performing his previous job or go home. (Tr. 39, 41). On August 30, 2006, Plaintiff applied for Title II Social Security DIB and Title XVI SSI. (Tr. 127, 133). Both claims were denied in a decision by the Social Security Administration dated October 18, 2006. (Tr. 90-94). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 95). The ALJ combined the claims into one hearing held on October 11, 2007. (Tr. 34, 121). The ALJ conducted the hearing by video teleconference and Plaintiff appeared in person at the hearing in Huntsville, Alabama, along with counsel, his wife, and a vocational expert ("VE"). (Tr. 34). In his decision, dated March 26, 2008, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to engage in sedentary work and that jobs compatible with Plaintiff's RFC, age, education, and work experience exist in significant numbers in the national economy; and therefore concluded that Plaintiff was not eligible for Social Security DIB or SSI. (Tr. 9, 17, 20-21). Plaintiff requested review by the Appeals Council of the ALJ's decision on April 16, 2008. (Tr. 5). On June 24, 2009, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner, and therefore, a proper subject of this court's review. (Tr. 1).

      At the time of the hearing, Plaintiff was 36 years old and had completed a high school education. (Tr. 20, 37). Plaintiff had worked for fifteen years as a mechanic, fixing sewing machines for sock mills. (Tr. 75, 151, 168-70). Since Plaintiff began physical therapy on June

11, 2003 (Tr. 280), records indicate a reduction in pain from a pain rating of 5 to 6 out of 10[1] upon initial evaluation to a pain rating of 3 to 4 out of 10 by July 3, 2003 (Tr. 279) followed by an increase in pain to 7 out of 10 by October 12, 2004 (Tr. 262), and partial decrease to 4 to 5 out of 10 by July 6, 2006. (Tr. 304-305).

## II. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled.

---

[1] Plaintiff's doctors used a scale from 0 to 10 to indicate Plaintiff's expressed level of pain. In this scale, "0" signifies "[n]o pain" while "10" signals that the "[p]ain is uncontrollable." (Tr. 304). At the 2-3 level, the "[p]ain interferes with what patient wants to do but not what patient needs to do." *Id.* A pain rating of 4-5 indicates that the "[p]ain interferes with what patient needs to do to work and household duties." *Id.* A pain rating of 6-7 signifies that the "[p]ain interferes such that the patients require assistance with self care" and a rating of 8-9 represents incapacitating pain that "requires hospitalization." *Id.*

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id*. If the claimant is determined to be capable of performing past relevant work, then he is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

In the instant case, the ALJ determined that (1) Plaintiff did not engage in substantial gainful activity during the time of the alleged disability; (2) Plaintiff does have medically determinable impairments that more than minimally affect his ability to perform work-related activities; but that (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P Appendix 1; and that (4) Plaintiff is unable to perform any past relevant work. (Tr. 15-16, 19). After consideration of the record, the ALJ found that Plaintiff retains the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with limitations. (Tr. 17). In making this RFC determination, the ALJ evaluated the credibility of Plaintiff's pain testimony using the *Hand* standard. (Tr. 17-19). The ALJ found that (1) "[m]edical evidence shows [Plaintiff] has

4

underlying medical conditions" and (2) "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms" before concluding that Plaintiff failed to meet part two of the pain standard because "the record contains little objective evidence to support the severity of the claimant's alleged pain" and Plaintiff's "allegations are inconsistent with the claimant's daily living activities, including caring for his 2-year-old daughter." (Tr. 17-19). Based on this RFC determination, the partial testimony of a VE, and Plaintiff's age, education level, and previous work experience, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 20).

### III. Plaintiff's Argument for Reversal

Plaintiff presents four arguments for reversing the ALJ's decision. First, Plaintiff argues that the ALJ "failed to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant fact." (Pl.'s Mem. 11). In particular, Plaintiff claims that "the ALJ totally discounted the records of [Plaintiff's] main treating physician at the time of his hearing, Dr. James Beretta, because Dr. Beretta's notes were illegible." *Id*. Plaintiff subsequently argues that had the Commissioner reviewed Dr. Beretta's records, he would have concluded that Plaintiff's condition met a listed impairment under 20 C.F.R. § 404, Subpart P Appendix 1. (Pl.'s Mem. 14-15). Plaintiff's third contention is that the ALJ unreasonably dismissed testimony while assessing Plaintiff's capacity to perform other work. (Pl.'s Mem. 15). Plaintiff submits that the ALJ mischaracterized his testimony to discredit him and that the ALJ's decision is inconsistent with testimony from the VE. (Pl.'s Mem. 16, 18). Finally, Plaintiff argues that the ALJ unreasonably discounted the mental health determinations of an examining physician vis-à-vis the determinations of a non-examining, non-medical consultant. (Pl.'s Mem. 20, 21).

5

## IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); s*ee also Martin,* 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

The issues before this court are (1) whether the ALJ failed in his duty to develop the record by not reviewing the testimony of a treating physician because the ALJ could not read the physician's handwriting; (2) whether the ALJ would have concluded that Plaintiff's condition met a listing under 20 C.F.R. 404, Subpart P Appendix 1 had the ALJ reviewed said physician's testimony; (3) whether the ALJ improperly discredited Plaintiff's testimony and unreasonably discounted the testimony of the VE; and (4) whether the ALJ erred by giving more weight to the testimony of a non-examining, non-medical consultant over the testimony of an examining physician.

### V. Discussion

    A.    <u>The ALJ's Failed Attempt to Retrieve and Consider Medical Evidence Did Not Constitute a Failure to Develop a Full and Fair Record.</u>

Plaintiff first asserts that "the ALJ totally discounted the records of [Plaintiff's] main treating physician at the time of his hearing . . . because they were difficult to read" and argues that "such actions are incongruous with the Administration's obligation to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'"  (Pl.'s Mem. 11-12, 14) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  This argument actually raises two issues: (1) whether the ALJ failed in his duty to weigh all the evidence; and (2) whether the ALJ failed in his duty to develop a full and fair record.  On both issues, the court finds that the ALJ did not commit error.

Concerning whether the ALJ failed to weigh all the evidence, it is well-established in this jurisdiction that "[t]he Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)).  Failure to do so is reversible error.  *Id.*

The record shows that the ALJ did not in fact "totally discount[] the records of [Plaintiff's] main treating physician at the time of his hearing," Dr. James P. Beretta.  During the hearing, the ALJ indicated to Plaintiff's attorney that he could not read the majority of Dr. Beretta's notes, mentioned what he could decipher, and granted Plaintiff time to retrieve a legible transcription of Dr. Beretta's records.  (Tr. 82-84).  To the extent that the ALJ discounted evidence from Plaintiff's treating physician, he did specify a legitimate reason for doing so.  The ALJ mentions twice in his opinion that "[a] treating physician, James P. Beretta, D.O., provided

7

records from 2004 to 2007" but that "the majority of his handwritten records are illegible." (Tr. 12, 15). Based on the ALJ's decision and Dr. Beretta's testimony, the court concludes that this is not a situation where the ALJ was presented accessible information but chose to ignore it. Rather, the problem is that the information presented to the ALJ was inaccessible. Therefore, the real issue presented here is not a failure to weigh evidence that is mostly illegible, but a failure to produce evidence that is legible.

It is also well-established that the ALJ has a duty to develop a full and fair record. 20 C.F.R. § 416.912(d); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). At the same time, it is likewise well-established that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The question presented before the court is whether the responsibility to retrieve legible testimony from one of Plaintiff's treating physicians fell to the ALJ as part of his duty to develop the record or remained part of Plaintiff's burden to prove disability.

Plaintiff cites *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981), in support of the position that the ALJ failed in his "obligation to 'scrupulously and consciously probe into, inquire of, and explore for all the relevant facts.'" (Pl.'s Mem. 14). In *Cowart*, the court found that the ALJ had unreasonably deemed the claimant's right to an attorney waived despite testimony indicating a desire by the claimant for legal representation and "made little or no effort to elicit evidence favorable to [the claimant's] claim." *Cowart*, 662 F.2d at 734-35. The court noted that in such a situation involving an unrepresented claimant where "the right to representation ha[d] not been waived, . . . the ALJ's 'basic obligation to develop a full and fair

8

record r[ose] to a special duty.'" *Cowart*, 662 F.2d at 735 (quoting *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981)). This special duty "requires the ALJ to 'scrupulously and consciously probe into, inquire of, and explore for all the relevant facts." *Cowart*, 662 F.2d at 735 (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)).

In a similar case, *Brown v. Shalala*, 44 F.3d 931 (11th Cir. 1995), a claimant who suffered from arthritis and dementia appeared *pro se* before the ALJ and signed a form waiving her right to counsel. Upon examination of the transcript, however, the court found that the claimant had actually wanted counsel and that "[n]othing in [the claimant's] testimony evinces an understanding that [the claimant] had other options which were either explored or rejected." *Id.* at 935. Additionally, the ALJ had indicated that he would request updated records from the claimant's doctor, but failed to include such evidence in the record. *Id.* Such an omission of evidence, the court concluded, was "undoubtedly prejudicial to a claim for benefits" and represented a failure by the ALJ to develop a full and fair record. *Brown*, 44 F.3d at 935-36.

The instant case, however, must be distinguished from *Cowart* and *Brown*. Both cases are exceptional in that the ALJ's responsibility to develop the record was elevated to a special duty because the claimant was unrepresented and had not waived the right to legal counsel. The special duty arises "when an *unrepresented* claimant unfamiliar with hearing procedures appears before [the ALJ]." *Cowart*, 662 F.2d at 735 (emphasis added). The goal of elevating the ALJ's obligations to this special duty was to ensure that "the claimant was not prejudiced by lack of counsel." *Brown*, 44 F.3d at 934. In the instant case, Plaintiff had legal counsel represent him at the hearing. (Tr. 34). Therefore, the underlying justification for holding the ALJ to a special duty is not present here.

9

The decision in *Ellison v. Barnhart*, 355 F.3d 1272 (11th Cir. 2003), appears to be more applicable to the instant case. In *Ellison*, the claimant argued that the ALJ failed in his duty to fully develop the record with regards to his seizure disorder during the two years following his application for disability benefits. *Id*. at 1276. The court found that the ALJ, though required to develop the claimant's medical history for the twelve months prior to the claimant's filing of his application for benefits, was "in no way bound to develop the medical record" for the two years subsequent to the filing. *Id.* More importantly for this case, the court also noted that the ALJ did in fact attempt to develop the record by twice requesting medical records from Plaintiff and that Plaintiff failed to produce the requested records. *Id.* While "[i]t is well-established that the ALJ has a basic duty to develop a full and fair record," the court concluded that, "[n]evertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Id.*; *see also Robinson v. Astrue*, 235 Fed. Appx. 725, 727 (11th Cir. 2007) (finding that the ALJ's special duty did not take effect when an unrepresented claimant waived the right to legal representation).

The ALJ cites *Ellison* to explain his decision to proceed based upon the available legible evidence after Plaintiff failed to submit legible transcriptions of Dr. Beretta's testimony or assist the ALJ in obtaining such documents. (Tr. 12). The court agrees that this is the appropriate rule to apply here. In this case, Plaintiff was represented, so the ALJ's special duty did not take effect. The task of producing evidence of disability therefore remained Plaintiff's burden. Since Dr. Beretta's testimony was illegible, the ALJ gave Plaintiff twenty days to retrieve a more legible transcription. (Tr. 84). In a letter to Plaintiff's attorney dated November 30, 2007, the ALJ indicated that he had not yet received a transcription from Plaintiff and extended the

10

submission date by ten days. (Tr. 197). Plaintiff's lawyer replied on December 4, 2007 that he had unsuccessfully tried to retrieve a transcription from Dr. Beretta and suggested that the ALJ try to request the records from Dr. Beretta. (Tr. 196). The ALJ twice sent letters to request a transcription from Dr. Beretta in December 2007 and January 2008. (Tr. 200).[2] The ALJ wrote back to Plaintiff's lawyer on February 28, 2008 to inform him that he was unsuccessful in his attempts to write to and call Dr. Beretta, asked Plaintiff's lawyer to let him know if he had a "good" address for Dr. Beretta, and informed Plaintiff's lawyer that he would have to issue a decision based on the records that had already been admitted into evidence if he did not hear from him in seven days. (Tr. 198). By the end of the seven days, no response had been received from Plaintiff's lawyer, so the ALJ proceeded to render judgment based upon the evidence that had already been admitted. (Tr. 12). Given that the burden to produce evidence of disability was always on Plaintiff and that the ALJ took steps (beyond what was required of him) to assist Plaintiff in retrieving evidence, the court cannot conclude that the ALJ failed his duty to develop a full and fair record.

---

[2] Both letters were apparently sent to the wrong address. The ALJ addressed his letters to 615 1st Street North, Alabaster, AL 35007, and 631 1st Street North, Alabaster, AL 35007. (Tr. 200). The address that appears on some of Dr. Beretta's old records is 613 1st Street North, Alabaster, AL 35007. After the first letter was returned, the ALJ consulted whitepages.com which gave him the address of 615 1st Street North. (Tr. 199). The address of Dr. Beretta's current office, however, was listed in the Disability Report submitted by Plaintiff and in the Disability Determination Service Medical Record Request as 500 Cahaba Park Circle, Birmingham, AL 35242. (Tr. 152, 303). There is nothing in the Record that suggests to the court that this was anything more than an honest, good faith mistake. But even more importantly, it was Plaintiff's duty to present evidence indicating that he was disabled. These failed efforts on the ALJ's part went above and beyond what was required of him in this case.

      B.      <u>Whether the ALJ Would Have Come to a Different Conclusion Had He Reviewed Dr. Beretta's Testimony is Not a Question Within the Court's Scope of Review.</u>

Plaintiff claims that "[i]f the Administration would have reviewed Dr. Baretta's records, it would have known the appellant was suffering from another disc herniation, and a proper analysis of Listing 1.04 could have been performed." (Pl.'s Mem. 14). However, as mentioned in the previous section, the burden of producing records that can be reviewed by the Commissioner falls upon Plaintiff. To the extent that Plaintiff urges the court to conclude, contrary to the findings of the ALJ, that Plaintiff's condition meets a listing, such a decision would overstep the court's role since the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Moreover, discerning what the ALJ would have concluded given different information, like all attempts at divination, requires a finding of fact that lies beyond the court's scope of review. Therefore, the court cannot conclude as a matter of law that "[P]laintiff was entitled to a favorable decision." (Pl.'s Mem. 15).

      C.      <u>The ALJ Misapplied the Pain Standard and Reached a Conclusion that is Not Supported by Substantial Evidence; the ALJ's Failure to Incorporate Vocational Expert Testimony Was Also Not Supported by Substantial Evidence.</u>

Plaintiff alleges two incidences in which the ALJ improperly discredited testimony offered at Plaintiff's hearing. First, Plaintiff argues that the ALJ erred in not finding his pain testimony fully credible due to his childcare activities. (Pl.'s Mem. 17). Second, Plaintiff asserts that the ALJ erred by not properly taking the VE's testimony into account. (Pl.'s Mem. 18). The court finds that the ALJ did commit error in both these areas.

The proper standard[3] to be applied in this Circuit when evaluating complaints of disabling pain was articulated in *Hand v. Heckler*, 761 F.2d 1545 (11th Cir. 1985), which held that in determining whether the claimant suffers from disabling pain:

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Hand v. Heckler*, 761 F.2d at 1548 (quoting S.Rep. No. 466 at 24); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

"If a claimant testifies as to his subjective complaints of disabling pain," as Plaintiff did here, and the ALJ decides not to credit such testimony, the ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations." *Dyer v Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations omitted); *see also Holt v Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Holt*, 921 F.2d at 1223; *Cannon v. Bowen*, 858. F.2d 1541, 1545 (11th Cir. 1988).

In the instant case, the ALJ found that "[m]edical evidence shows [Plaintiff] has underlying medical conditions" and that "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms." (Tr. 18-19). Yet the ALJ concluded that "[a]lthough the claimant me[t] part one of this standard, with evidence of

---

[3] To the extent that the ALJ cites Social Security Ruling 96-7p and Regulations 20 C.F.R. §§ 404.1529 and 416.929 as separate from the *Hand* standard (*see* Tr. 18), these rules were incorporated into this jurisdiction's case law through *Hand v. Heckler*. See *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1213-17 (11th Cir. 1991).

13

underlying medical conditions, he fail[ed] to meet part two" because Plaintiff's medical evidence "does not support his allegations of severe and chronic pain" and that Plaintiff's "allegations are inconsistent with the claimant's daily living activities, including caring for his 2-year-old daughter." (Tr. 19). The ALJ also concluded that "the record contains very little objective evidence to support the severity of the claimant's alleged pain." *Id.*

There are problems with the ALJ's application of the *Hand* standard. First, the ALJ misconstrues the second prong of the *Hand* test. A claimant may satisfy the *Hand* test if there is objective medical evidence to confirm the severity of the alleged pain *or* if the underlying medical condition can reasonably be expected to give rise to the alleged pain. *See Hand*, 61 F.2d at 1549; *Foote*, 67 F.3d at 1560; *Holt*, 921 F.2d at 1223. A claimant only needs to meet one of these requirements, not both. *See Foote*, 67 F.3d at 1560 (11th Cir. 1995). The ALJ has concluded that the second prong has not been met because "the record contains very little objective evidence to support the severity of the claimant's alleged pain." (Tr. 19). That analysis suggests he misapplied the proper standard. First of all, "very little objective evidence" is not the same thing as no evidence. But even if a claimant does not produce objective evidence confirming the severity of the alleged pain, because the test is disjunctive, the claimant may still satisfy the second prong of the *Hand* test if the underlying medical condition could reasonably be expected to give rise to the alleged pain. The court makes no attempt to ascertain whether the underlying medical condition in the instant case could reasonably be expected to give rise to the alleged pain – that is a finding of fact reserved to the ALJ. Indeed, the ALJ did make a determination, finding that (1) medical evidence shows that Plaintiff has underlying medical conditions and (2) that Plaintiff's medically determinable impairment could reasonably be

expected to produce the alleged symptoms. (Tr. 18-19). Given these findings of fact, as a matter of law, the two prongs of the *Hand* standard appear to have been satisfied.

If an ALJ chooses to discredit a claimant's pain testimony, he must "articulate explicit and adequate reasons for discrediting the claimant's allegations." *Dyer,* 395 F.3d at 1210 (internal quotations omitted). The ALJ has indicated four reasons in his opinion for discrediting Plaintiff's pain: (1) the "record contains very little objective evidence to support the severity of [Plaintiff's] alleged pain testimony;" (2) Plaintiff's "allegations are inconsistent with [Plaintiff's] daily living activities, including caring for his 2-year-old daughter;" (3) "Dr. Hash found muscle strength of 5/5 in the upper and lower extremities;" and (4) Plaintiff "was released to work at the light level in 2004, and he returned to work through March 2006." (Tr. 19). The court has already addressed the first reason provided by the ALJ. To the extent that the ALJ discredited Plaintiff's pain allegations because he found them "inconsistent with [Plaintiff's] daily living activities, including caring for his 2-year-old daughter," it is well-established in this jurisdiction that participation in everyday activities of short duration does not necessarily disqualify a claimant from disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability. . ."). In *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985), the court reversed the ALJ's decision to discredit the claimant based on her ability to read, watch television, embroider, attend church, and drive an automobile short distances," and perform "housework for herself and her husband, and accomplish[] other light duties in the home." In the instant case, it is uncontroverted that Plaintiff cannot comfortably watch television (Tr. 57), cannot stand for 15 minutes at his child's dedication (Tr. 66), rarely

15

attends church (Tr. 56), and does not drive (Tr. 40).  To the extent on this record the ALJ disallowed Plaintiff's disability claim based upon his daily activities such as caring for his two-year old daughter, especially when contrasted with the myriad of everyday activities not found to preclude a finding of disability, that was erroneous.

This court in *Bennett v. Barnhart*, 288 F.Supp. 2d 1246, 1252 (N.D. Ala. 2003), held that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." (citing *Smith v. Califano*, 637 F.2d 968, 971-72 (3rd Cir. 1981)). The court quoted favorably from the Eighth Circuit, stating that "an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled." *Id.* (citing *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989)).  "What counts," the court noted, "is the ability to perform as required on a daily basis in the sometimes competitive and stressful environment of the working world." *Id.* (internal citations omitted).  Here, the ALJ did not make sufficient findings as to how Plaintiff's care of his two-year-old daughter demonstrates a capacity to perform in the working world.  Therefore, in the absence of an explanation, the court finds that the ALJ's decision is not supported by substantial evidence.

As for Dr. Hash's muscle strength rating of 5/5, the ALJ does not explain how Dr. Hash's muscle strength rating of Plaintiff is related to Plaintiff's pain testimony. Surely, the ALJ does not mean to imply that strong people cannot experience debilitating pain or that people experiencing debilitating pain cannot exhibit strength.

With regard to Plaintiff's return to work, while returning to a previous job to engage in substantial gainful work is prima facie evidence that a claimant is not disabled, that is not the case here.  In *Roberts v. Apfel*, 27 F.Supp. 2d 1295, 1296 (N.D. Ala. 1998), an employer

generously allowed the claimant, a physically-ailing longstanding employee, to keep his paycheck and job title despite knowing that his impairments prevented him from actually performing his duties.  The ALJ, overlooking the particular nature of this arrangement, concluded that the claimant was capable of performing his past relevant work based on his continued employment. *Id.*  The court reversed that decision, noting that the job was, in effect, a subsidy and that "[t]he fact that a claimant could hold down such a job, perhaps created precisely so an extremely impaired individual could fill it, would reveal nothing about the claimant's physical and mental capabilities to do actual work." *Id*. at 1298 (internal quotations omitted). The logic of this ruling appears to be relevant to the case at hand. Plaintiff testified that when he returned to his place of work, he was not actually performing the same job that he had performed prior to the injury.  (Tr. 39). He was allowed to go to work "two or three days a week at the time" where he would "fill[] out tickets and [do] just nothing really." (Tr. 40, 41).  In Plaintiff's view, he "wasn't really doing a real job."  (Tr. 41).  Rather, the company was just "letting [Plaintiff] come to work more or less." (Tr. 40).  Like the claimant's job in *Roberts*, Plaintiff's job appears to have been, in effect, a subsidy.  As such, it doesn't provide an accurate indication of Plaintiff's current mental and physical capacity to do actual work.  To treat it as such would run counter to the ALJ's conclusion that Plaintiff is unable to perform any past relevant work.

      Plaintiff's second claim in this argument is that the ALJ's decision is inconsistent with testimony from the VE. (Pl.'s Mem. 18). The court agrees in so far as it finds that the ALJ's decision to discount VE testimony was not supported by substantial evidence.  The record indicates that Plaintiff needs to use a traction device two to three times a day for twenty-minute sessions with fifteen to twenty minutes to get up.  (Tr. 48, 49).  After the VE at the hearing had

17

indicated that she believed that Plaintiff could perform sedentary unskilled work such as that of an almond blancher or a belt wire inserter, Plaintiff's Attorney asked the VE how Plaintiff's need to "lie down on the floor once or twice a day for an hour at a time for the traction that's been prescribed per his doctor" would affect his ability to maintain jobs such as an almond blancher or other jobs mentioned by the VE. (Tr. 81). The VE stated that she didn't "believe that with unskilled jobs that an employer would allow [an employee] to have two breaks a day for any hour during the working hours." *Id.* The VE further mentioned that "[u]nskilled jobs usually don't even give an hour for a lunch break." *Id.* In determining whether jobs exist in significant numbers in the national economy of which Plaintiff could perform, the ALJ referred to the VE's testimony that Plaintiff would be able to perform the requirements of sedentary unskilled occupations such as that of an almond blancher or a belt wire inserter. (Tr. 20). The ALJ, however, fails to reconcile this part of the VE's testimony with her later statement that such jobs would not afford Plaintiff the time to perform his required traction exercises. (Tr. 20-21). This is not to say that the ALJ must enumerate and address every minute detail in his decision. In this jurisdiction, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as . . . the ALJ's conclusion as a whole [is] supported by substantial evidence." *Dyer*, 395 F.3d at 1211. However, when an ALJ fails to address VE testimony that directly contradicts his conclusion, the court cannot ignore that. Nor can it conclude that the ALJ's decision was supported by substantial evidence. *See Lamb v. Bowen*, 847 F.2d 698, 704 (11th Cir. 1988).

D.  The ALJ Did Not Ignore or Give Less Weight to the Testimony of an Examining Physician Against the Testimony of a Non-examining, Non-Medical Consultant.

Plaintiff contends that the ALJ unreasonably gave more weight to a non-examining consultant, Robert Estock, than the testimony of an examining physician, Dr. Rogers, by "choos[ing] to ignore [Dr. Rogers' and Dr. Beretta's] opinions in favor of Robert Estock, a State agency consultant." (Pl.'s Mem. 19). However, based on the record, the court cannot conclude that the ALJ had chosen to ignore the opinion of Dr. Rogers. In discussing the determinations of the physicians who treated Plaintiff, the ALJ included the findings by Dr. Rogers, noting that "Dr. Rogers found that although the 'extent of [Plaintiff's] mental impairment is severe,' the claimant 'should be able to perform most activities of daily living.'" (Tr. 16). The ALJ then described the findings of Robert Estock before concluding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P Appendix 1. *Id.* The ALJ indicated that in making this finding, he "adopt[ed] the assessment of the state agency consultant with regard to mental functional limitations evaluated under the requirements of Medical Listings 12.04 and 12.06." *Id.*

While adopting Estock's assessment, the ALJ did not say that he was using it as a substitute for any of the medical opinions he had considered nor did he suggest that Estock's findings were inconsistent with the determinations of Dr. Rogers or any other physician. (Tr. 17). Rather, it appears that the ALJ was trying to consider all of the medical evidence together. To the extent that the ALJ adopted Estock's assessment with regard to mental functional limitations evaluated under the requirements of Medical Listings 12.04 and 12.06, his findings suggest that such reliance on Estock's testimony rather than Dr. Rogers arose, not as a matter of

19

subjective preference, but because Dr. Estock evaluated mental functional limitations under the requirements of Medical Listings 12.04 and 12.06 whereas Dr. Rogers' evaluation did not. (Tr. 350-54, 356). Therefore, the court does not find that the ALJ chose to ignore the opinion of Dr. Rogers or gave more weight to one opinion over the other.

### VI. Conclusion

The court concludes that the ALJ did not fail in his duty to develop the record since the burden of proving disability was always on Plaintiff and the ALJ had gone beyond the call of duty to assist Plaintiff in retrieving evidence. The court also finds that the ALJ did not ignore or give less weight to the testimony of an examining physician against the testimony of a non-examining, non-medical consultant. However, the ALJ's misapplication of the *Hand* standard in evaluating Plaintiff's pain testimony and the ALJ's unexplained failure to address important testimony by the VE directs the court to conclude that the ALJ's decision is not supported by substantial evidence. Therefore, the Commissioner's final decision is due to be reversed in part and a separate order in accordance with the memorandum of decision will be entered.

**DONE** and **ORDERED** this ___25th___ day of August, 2010.

                                                        **R. DAVID PROCTOR**
                                                        UNITED STATES DISTRICT JUDGE